Case No. 21-3290 Anthony Novak v. City of Parma, OH et al. Oral argument 15 minutes per side. Mr. Screen for the appellate. Good morning. Good morning, your honors. May it please the court, my name is Don Screen and I represent the appellate in this matter, Mr. Anthony Novak. I'd like to reserve three minutes for rebuttal if I could. While I of course would be happy to answer any questions the panel may have, with the panel's indulgence I'd like to spend at least most of my time addressing the intersection of the First Amendment and the Fourth Amendment for the requirements that arrests be supported by probable cause. For two reasons basically. The district court identified ten claims that went away after its disposition of the probable cause determination. So it's a very central and important issue. Secondly, there's a very basic and recognizable error that both the district court and the appellate commit in this matter, which once exposed will enable the panel to see this case in a whole new light. Are you going to expose it for us? I intend to, your honor. Why don't you go to it? I am. The district court acknowledged that there is an issue of fact regarding whether Mr. Novak's Facebook page was protected speech, but then it went on to say even if it was protected, Mr. Novak's conduct in confusing the public was not. And miscauses it to say that because defendants had probable cause to arrest Mr. Novak, we needn't even consider whether the speech was protected by the First Amendment. We can refer to this view as the you're free to speak unless you break the law view. Or your freedom to speak ends where the criminal law begins. Well, you do realize there are crimes that turn on speech. Indeed. There are several specific exceptions to the First Amendment, which for very particularized reasons have been carved out of the First Amendment. Doesn't that get to the nub of the matter? What's complicated about this is it would be very strange to be a police department and not take seriously calls from constituents trying to understand what's going on with this fake page or we'll call it parody page, whatever you want to do. But the line between fake and parody and misleading and parody is a little tricky. That's part of the fact-based question. It might be that the police department exercised error in judgment in prosecuting. What does not seem remotely possible to me is that they exercised error in trying to figure out what was going on. That would seem to me utterly irresponsible. Citizens may go to the page to figure out what's going on. So why isn't it serious at the outset to investigate it and try to figure out what's going on? To investigate, perhaps, but with eyes wide open to the prospect that what Mr. Novak did was engage in free speech. The law director and the officer did not even consider the free speech implications of what Mr. Novak had posted. Go ahead, sorry. Didn't consider the free speech implications. It wasn't on their radar. Law director Novak said that we saw this as a disruption case. We didn't see it as a first amendment case. Why couldn't they treat the deleting of comments and the copying of the page as conduct rather than speech? And why wouldn't that at least be an open question? Well, the attempt to recast speech as conduct is fraught and it doesn't really accomplish its purpose. But do you have a case that would tell the officers that it's clearly established that they should consider that speech? Because I find that to be a particularly difficult question. In other words, whether deleting comments and copying things is actually speech. It's all part of the satire. All part of the parody. I understand, but why would the officers conclude that? Why would they conclude it's speech? In other words, what would tell them it's speech? If it's a hard question for us? Because it's the expressive content of what Mr. Novak posted that caused offense to the police department. Both Novak and Connor lamented or be moaned. Explain to me, okay, give me two things. One, where you have a case in any court where it says deleting comments is speech. And second, why deleting someone else's comment is expressive? Well, if you look at Mr. Novak's deposition testimony, he did that because he didn't want to cheapen the satire by giving undue credence to those who either clearly recognized it and wanted to spoil a joke for the rest of them or those who were not alert enough to recognize that it was indeed satire. So I look at all that and Mr. Novak characterized it himself as an attempt to deepen the satire. And this panel previously concluded that that's exactly what he had done. How would this work? This is what I think is difficult for me about the case. So take Facebook out of it. You just have some clever hacker goes to the IRS website and says, you know, plays with the website and then changes some really big things and has some big notices. You know, no need to file taxes this year. Everybody gets $10,000. So you have a couple things that are outright lies and fraud. But then you have some things that are doing a little bit of poking fun at the IRS. So you have this kind of double message where it's doing some things that are very strange. I mean, you could argue it's implausible, for example, that everybody gets $10,000 this year. So that looks like parody, satire of some sort. But at the same time, it's really striking. I mean, the idea that the government could not say you're disrupting our enforcement of the law just strikes me as unbelievable, even though you could argue part of it has a feel of parody or satire. How would you deal with that case? I know it's not this case, but how would you deal with that case? I would say that the earmarks of satire are often evident from the satire itself. Mr. Novak himself said... No problem with hacking the website. No problem with manipulating things it says. No problem with some outright lies. If there's a little bit of parody mixed in, all protected, you can't charge them. Well, he wasn't hacking the website... No, no, no, no. It's a hypothetical. Please stick with the hypothetical. I'm trying to figure out... I'm just really puzzled by the idea that parody protects you in that setting. Well, you look at a totality of the circumstances. Upon reflection, would this post reveal itself as parody, as not stating real facts? In your IRS example, you balance the comments that appear to be parodic and those that appear to be serious and form a conclusion with the totality of the post, whether it's parody or not. How about along the lines of Judge Lepar's question? The hacking itself is not speech. Well, he wasn't... In my hypothetical, though, would you say hacking is not protected because even though it uses words, it's conduct? Well, if he had hacked into the server, if it's conduct as opposed to speech, if it's not the expressive content of Mr. Novak's post that causes the issue, then yeah, punishment is fair game. But what they did here, they were offended by the content. Novak said it was destructive misinformation. It went a long way toward ruining farmers' hard-earned reputation as a racially sensitive community. And so it was clearly based on the content. Why isn't... He wasn't prosecuted simply because he made the comments. He was prosecuted because those comments led to disruption in police services. Allegedly. We don't think they did. Well, there were 15 calls or something to one of the lines. And that's the reason he was investigated. Because he violated the statute. It wasn't just the speech. The speech could have been anything. Protected speech or not protected speech. But it then triggered conduct by others that arguably violated an Ohio statute. I know the jury ultimately wasn't convicted, but that's what the police believed. So the prosecution wasn't entirely based on speech. It was based on the conduct that was caused by his speech. The effects of speech, right. But we know from Supreme Court precedent that effects of speech are as protected as the speech itself. Unless the effects are so serious that they trigger Randenburg v. Ohio. They incite violence or rioting. But generally speaking, and we can look at the interruption statutes, the disruption statutes nationwide, the disorderly conduct statute, where the Supreme Court uniformly holds that you can't penalize the expressive content of the speech. If the speech is accompanied by physical appurtenances as in Reichel or other Supreme Court cases. Maybe your point is that the statute is unconstitutional. Or the Ohio law is unconstitutional. Or potentially unconstitutional is applied. Potentially. Is that the question we have to answer? Or is the question what the officers would have thought in this circumstance? Knowing what they know about both the postings and then the disruption calls to the 911 center. Certainly as applied statute is unconstitutional. It can't be applied to suppress or punish the expressive content of Mr. Novak's speech. So we don't need to find that the statute is unconstitutional on its face because it clearly has a large gamut of proper application. Your point is that the officers should have made that judgment on their own. That applying the statute in this context would be unconstitutional. So even though those calls are coming in and disruptions are happening, we should investigate what happened. To be sure, they ought to have been trained to recognize the First Amendment import of what they were dealing with. Because they were either oblivious to it or chose not to take account of the First Amendment implications. And for that, yeah, the statute as applied was unconstitutional. The officers should have recognized that. The evidence is clear that Farber did not train them to recognize those things. They've been engaged in numerous cases in which the First Amendment was not respected. In which arrestees were prosecuted for cases that fall, as this panel said earlier, well within the heartland of First Amendment protection. Can I ask you before your time runs out? So the Nieves case from the Supreme Court says that it's legitimate to consider speech when considering whether to make an arrest. Right. It is legitimate to consider the non-communicative aspects of speech. In Reichel, in Nieves, we had physical confrontation as well as verbal expression. And the court made it clear that they were focused on the physical confrontation and not the verbal expression. And what we have in Nieves is an interesting amalgam of the two. The court recognized that when you have both a physical aspect and a verbal aspect, and you can't really tell what the motive of the officer was in affecting the arrest, we're more or less going to presume that it was probable cause to support the arrest arising from conduct other than speech. Then the arrest is proper. But if you read both Nieves and Reichel carefully, you find that what you're looking at, in Reichel, the defendant both criticized Vice President Cheney and touched him improperly and then lied about it. So there's plenty of probable cause to support this arrest for reasons other than the speech. But the court was also clear that we're not looking at the speech itself. We're not looking at the fact that he criticized Vice President Cheney. The same is true of King v. Ames. The case of the Pelley recognized the site for the proposition that this court can grant qualified immunity for speech, which by virtue of its manner obstructs police operation. Mr. Sweeney, I see your time is up. If you want to use your rebuttal time now, you can, or you can save your time for rebuttal. It's your call. If you'd like me to continue answering that question, I'm happy to. Otherwise, I prefer to leave my three minutes for rebuttal. Judge Depard, Judge Rather, do you have any other questions for Mr. Sweeney at this point? None for me, thanks. Okay, we'll hear from Mr. Travis. Thank you. May it please the court, I'm John Travis, representing the defendant's appellees in this matter. The court in Novak I said that if the police had probable cause, they're entitled to qualified immunity because the law at the time did not clearly establish any First Amendment violation. Objectively, Captain Riley and Detective Conner reasonably believed that probable cause was present for three reasons. First, at every stage, experienced career lawyers, including jurists, found probable cause. Second, the police had evidence that Mr. Novak violated the disruption statute. Third, unrebutted expert testimony confirms that they acted appropriately. On the first point, in CARMA, probable cause was found by the prosecutor, two judges, and a magistrate. At the county level, three assistant prosecutors, one before the grand jury and two at trial, the elected county prosecutor himself and the trial judge all found probable cause. If experienced career lawyers, multiple judges, and a magistrate, nine in all, found probable cause, it is objectively unreasonable to expect the police to conclude otherwise. Second, the police had evidence that Mr. Novak violated the disruption statute. He intentionally impersonated a police Facebook page, falsely represented it as the official page, and deleted comments to conceal the falsity of his fake page. I asked you about that last point, the deletion of comments. Did the officers factor in the deletion of comments into their probable cause inquiry? The officers were focusing on the effects of the speech, the disruption, Judge Sapara, not the content itself. So when they were deciding, did they pay attention to the deletion of comments or not? Because I didn't see any evidence that they did at the time pay attention to it or bring it up with anyone. Judge Sapara, I think the record is silent on that issue, as you acknowledge, as you point out. About everyone was looking at the disruption factor and the effect of the speech as opposed to the actual content of the speech. Does that answer your question, Your Honor? Yes. Is there case law about what counts as disruption under this statute? Do the cases kind of illustrate some examples of disruption that's cognizable for a prosecution? Chief Judge Sutton, there is some case law. The division of the statute under which Mr. Novak was prosecuted does not require any substantiality component. Just that there be some disruption as opposed to Division A, which talks about substantial disruption of police at an emergency scene, for example. And there is an Ohio case cited in our brief that held that there need not be substantiality with respect to phone calls, as it turns out. So there is some Ohio case law. Of course, no case holds that the statute is unconstitutional, either on its face or as applied. And how are the police supposed to know otherwise? I would also point out, as Judge Lafarre alluded to earlier, that Mr. Novak actually copied verbatim the official warning of the police department saying that there's a fake page out there. That is just false. And I don't see how that qualifies as parity under any definition. We also have the expert testimony of Mr. John Ryan, who is a nationally recognized police expert. He eviscerates Mr. Novak's claims. At page 149 of his report, Mr. Ryan averts that any reasonable officer would have concluded that the arrest and search warrants were proper. Mr. Novak has no opposing expert, so Mr. Ryan's opinions are unbiased. Now what's particularly important in this case is that there must be some particularized precedent that would put the officers on notice that what they were doing was unlawful. There is not. As a matter of fact, in the recent Tlaiqua v. Bond case decided last October, the Supreme Court said that the law must be so well defined that it is clear to a reasonable officer that his conduct was unlawful in the situation he confronted. Now, in this matter, the parties, the six of me, no one has found any precedent that even closely resembles this case. Here we have Mr. Novak duplicating a police website used for public safety. In so doing, he undermines a legitimate governmental interest in public safety. That feature distinguishes virtually every case cited by Mr. Novak. And if and when a case such as this arises, the court would have to weigh any First Amendment claims against the public safety concerns. But in the absence of any such precedent, we submitted that it is disingenuous to expect that the police would know that proceeding as they did was unconstitutional and unlawful. Counsel, is your evidence of disruption to the public just these phone calls, these 10 or 15 phone calls to the department? Judge Riegler, it's the phone calls as well as the investigation by the police, the law department being involved, City Hall being involved, so there was a great deal of public resources devoted to... But once they start investigating, can they use that as evidence of disruption? That's an open question, Judge Stepart, but I think the fundamental and primary evidence of disruption is the phone calls. Can I ask you about his testimony? Because one thing that troubles me is in his testimony, he said that people honest to God believed the page was real. But when you read all the phone calls, that's a hard case to make. It seems like at most one to two may have thought it was real, but I don't know that many... People were calling in saying it was fake and telling the police there was a fake page up. What do we do with that? Well, Judge Stepart, I think that's Detective Conrad's subjective opinion. Is it really? Is that a fair subjective opinion? You've read the phone call transcripts, right? Yes, I have, Your Honor. That doesn't seem like a fair opinion to me. I mean, I get officers making calls on the fly, but you had time to sit here and read these, and when I read them, do you see that? I'd be curious. Well, I think some people were confused. Some people were calling to check if this was a fake page or not, but his motivation and his intent is immaterial for purposes of qualified immunity. You look at it objectively. So his comments really don't mean anything, I would submit. And as the lower court did in its Pearson v. Callahan authorizes, instead of addressing the complex, I think in this case, First Amendment issue, the court can go to the second prong, which is whether the law was clearly established, which is an objective statement. This court also in Novak I noted that if Mr. Novak could show that retaliation was a substantial or motivating factor, and we emphatically reject that it was, the next question is whether the officers would have arrested him absent that retaliatory motive. But we know what would have occurred. County Prosecutor McGinty independently reviewed this case, and without any input or influence from the officers, decided to proceed. In fact, even after Mr. Novak was acquitted, Prosecutor McGinty in his deposition said he would prosecute him again if he did the same thing. Moreover, the trial judge Maureen Clancy also rejected Mr. Novak's First Amendment claims, again focusing on the effect, the disruption, the interruption, not the speech itself. And Mr. Magistrate Fink in his deposition, after being shown all the posts and asked what would he have done knowing that, he reaffirmed, I'd still find probable cause. That's so because the focus was on the effect of the speech, the interruption or disruption, not the speech itself. So, one fundamental flaw in the appellant's case, I would submit, is the lack of causation, the moving cause. The moving cause is not what... ...to tell you. Would that be enough for you to investigate and go after the Babylon Bee? Mr. Shapar, that's an interesting question that the officers did not consider that was not his case. What distinguishes it from this case? You're saying the calls are the disruption, and my point is, we all agree that if Babylon Bee did something like that, it would be protected speech. No one would debate it. And so, and the fact that there was disruption would allow the officers to essentially shut down the Babylon Bee? It depends on the governmental interest at issue. Here we have Mr. Novak quoting a police website, and at one point saying this is the official Carmel Police website. That's beyond the pale. That is not like the onion. But your point is that the disruption results from the calls, and what I'm trying to figure out is what's the line? In other words, how do I draw that line? Is it really that he's in effect, you're arguing, impersonating the police page versus something the Babylon Bee would do? Or are you, because anything could cause 20 calls, right? Perfectly protected speech could cause 20 calls if people are confused or want to tell the police. Your Honor, what I think distinguishes this case is that there's a legitimate governmental interest in maintaining the integrity of the police website and maintaining public safety. Prosecutor McGinney pointed out that he was very concerned about people being confused by a website used to alert people of crimes, solicit tips, notify people of things such as road closures. So that's what distinguishes this case. Maybe there's a plausibility thing going on. I mean, it is a really good question, but you know, if the Parma Police Department's official website suddenly said we're now hosting the onion, there'd be a little bit of a plausibility problem there. And I think vice versa, if the onion is suddenly saying we're the official website of Parma Police, I think there's a little bit of a plausibility problem. So maybe that's how to deal with it, but you know, you still might get calls. And if you get calls, you say that's disruption. Well, Chief Judge Sutton, I would point out as well, and Judge Safar, that there was an intent to disrupt here. After Mr. Novak saw that there were news reports that there were some 50,000 shares of this, so it was spreading like wildfire, after he knew of it, he posted the police warning to the public, which implicates public safety issues. He also took down conduct, so he knowingly, really intentionally caused disruption. So it's not just a matter of a jokey page, and he's a noble parodist. And of course, speech integral to criminal conduct can be punished, can be prosecuted. I would also reaffirm the point that judges, not police officers, decide if a law is unconstitutional on its face or as applied. The police are not expected to be constitutional experts. They apply, and they enforce the law rather than interpret it as we are doing today. Can I ask you one fact question? Is the 9-11 call center and the non-emergency center the same thing? Yes. There's no two call centers. Right. Okay. If judges disagree on a constitutional question, it's unfair to subject the police to liability for picking the losing side. And that's what we have here. In Novak 1, this court focused on probable cause. We have overwhelming evidence of probable cause. We have experienced lawyers and judicial officers, nine in all, finding probable cause. Detective Connor and Captain Riley had evidence that Mr. Novak violated the disruption statute, and expert testimony affirms that they and the city acted appropriately. Mr. Novak, though, asserts that he, and only he, got it right. He would have us believe that. But the facts in the law in this matter establish that Mr. Novak is the one who is mistaken. If the court has any other questions, I'd be happy to entertain them. Thank you, Mr. Travis. I appreciate your argument. We'll hear from Mr. Screen when we get here for rebuttal. I think you're on mute still. I apologize. With regard to the deletion of comments, there's no evidence in the record that the deletion of comments played any role in the ascertainment of probable cause by the officers. And regarding the calls to the center and the safety department, those are hotly disputed fact issues. We don't know. We have the recordings. But as to who believed what, who believed that these were real, who believed that they were fake, these are disputed questions of fact that the court cannot decide as a matter of law. The city frequently speaks of the legitimate interest of PhRMA in preserving its ability to respond to calls and not be disrupted and so forth. When we're talking about the First Amendment, legitimate interest is not the inquiry. There has to be a compelling interest. This is a strict scrutiny case. The content of Mr. Novak's post were protected by the First Amendment. To overcome that presumption, the appellees would have to demonstrate a compelling governmental interest that overrode Mr. Novak's substantial interest in being able to express himself as he did. And with regard to the intent to disrupt, intent is never sufficient to deprive otherwise protected speech of protection. The NAACP versus Claiborne Hart were a Supreme Court case. That was a tort case, intentional interference with business relations. Despite the substantial damage that had been caused by that intentional interference, the speech was protected. Or look at Hustler v. Falwell. That was a case of intentional infliction of emotional distress. It was an element of the court. And yet notwithstanding that the magazine had that intent and notwithstanding that it had a serious effect on Falwell, the court said no, this is protected speech. So the number of state court judicial officers and prosecutors who took a look at this and didn't perceive a First Amendment issue, well, the first thing I would say is thank goodness for federal courts who can step in and say, no, there is a First Amendment issue here. You guys got it wrong. And I suspect the reason you got it wrong is you were entirely misinformed. You didn't know the facts. You would think that when Connor approached Fink, he would have shown him the post. He would have disclosed his own conclusion that they were a joke. That he would have disclosed the fact that not a single call was unanswered because of these posts. That almost as a matter of law, there was no disruption here. So again, fact issues preclude the summary judgment that the district court entered on most all of the issues here. And in light of the First Amendment principles I laid out at the beginning of the argument, I would respectfully request reversal of the district court's judgment. Unless the panel has any additional questions for me, I thank you for your time. Thank you, Mr. Screen. Thank you, Mr. Travis. We appreciate your briefs and your arguments. It's a super interesting case and it's great to have good lawyers here. So thank you for your assistance. The case will be submitted and the clerk may adjourn the court. Dishonorable Court is now adjourned.